IN THE UNITED STATES FEDERAL COURT OF CLAIMS

EDGE CONSTRUCTION COMPANY, INC.,
A Michigan corporation

Plaintiff

V

THE UNITED STATES.

Defendant

Case Number:
Judge

FILED
SEP 8 2006
U.S. COURT OF FEDERAL CLAIMS

06-635 C

JOHN K. GRYLLS P13350
Attorney for Plaintiff
JOHN K. GRYLLS, P.C.
18430 Mack Avenue
Grosse Pointe Farms, MI 48236
(313) 885-0123
(313) 886-7699 fax
jkgrylls@comcast.net

**COMPLAINT**

Plaintiff, EDGE CONSTRUCTION COMPANY, INC., by and through its attorneys, complaining of Defendant states as follows:

1. That Plaintiff, EDGE CONSTRUCTION COMPANY, INC. (Edge), is a Michigan corporation authorized to do business in the State of Michigan as a general contractor.

2. That all times material hereto, Plaintiff Edge was and continues to be engages in business in the construction industry as a general contractor for commercial and institutional construction projects.

3. That Defendant, UNITED STATES (United States) and the Division of the United States Department of Veterans Administration, organized and existing under the laws of the United States enetered into a contract with Plaintiff Edge..

## JURISDICTIONAL ALLEGATIONS

4. That this dispute arises out of a certain contract for construction services between Plaintiff Edge and the United States, Department of Veterans Affairs, where Plaintiff Edge was the general contractor on the project known as:

   Contract No: V786C-708 8A
   Great Lakes National Cemetery
   Veterans Administration

   hereinafter referred to as the Project

5. That contract number V786C-708 8A was awarded to Plaintiff Edge on September 1, 2004 in the total amount of $8,691,000.00.

6. That because of the voluminous nature of the contract documents, and because Defendant United States is in possession of same, they are not attached hereto, but are hereby referenced and adopted as a part of this complaint.

7. That pursuant to the terms of the contract, disputes arising out of the work are subject to the Contract Disputes Act of 1978 (41 USC 601 et esq.), hereinafter referred to as the CDA.

8. That pursuant to 41 USC 609, Edge may sue on a Contracting Officer's final decision in this court within 12 months from the date of the receipt of the final decision of the contracting officer by Edge.

9. That this suit is within the jurisdiction of this court.

## COUNT 1

10. Plaintiff Edge re-alleges the preceding paragraphs as if fully set forth herein.

11. That on September 9, 2005 the Contracting Officer submitted its Notice of Termination for Default, terminating the referenced contract for default with the exception of Base Bid Item No. 2 and the portion of the ETA (Early

Turnover Area) identified within the red-lined area of the attached drawing and the accompanied work list of items (Exhibit 1).

12. That the Contracting Officer stated that the Termination for Default was in accordance with the provisions of the FAR's 49.402-3(f) and pursuant to FAR 52.249-10, citing "lack of progress, failure to meet contract specifications, failure to meet submittal schedules, and poor workmanship quality both inside the ETA area and outside the ETA area and failure to meet progress schedule timelines, and conditions that are endangering the timely performance of the remainder of the contract."

13. That Edge had performed the contract work in a workmanlike manner and in accordance with its established construction schedule as was possible under the extreme and unusual weather conditions extant for the Michigan weather prevailing at the time in question.

14. That the alleged facts relied upon by the Defendant United States were inconsequential and incorrect thus making the termination wrongful.

15. That Plaintiff Edge was substantially complete with the portion of the contract work known as the ETA (Early Turnover Area) as indicated on the "Transfer and Custody Receipt" issued by the VA on September 1, 2005 with the "punch list" attached thereto (Exhibit 2).

16. That the wrongful termination caused the bonding company that issued its Performance Bond number 6909187 in the Penal Sum of $8,691,000.00 (Exhibit 3) to pay the United States for the completion of the contract the amount of $5,849,795.20.

17. That the wrongful termination caused the bonding company that issued its Payment Bond number 6909187 in the Penal Sum of $8,691,000.00 (Exhibit

4) to pay the unpaid subcontractors for the work that they had performed on the project the amount of $753,239.11 to date.

18. That the wrongful termination caused the bonding company that issued its Performance and Payment Bonds numbers 6909187 in the Penal Sum of $8,691,000.00 to provide management and attorney fees the amount of $312,692.64 to date.

19. That the wrongful termination caused the loss of the entire business of Plaintiff Edge making Plaintiff Edge insolvent and unable to survive for a loss of economic value of $2,000,000.00

WHEREFORE, Plaintiff Edge prays that this honorable court grant judgment in its favor against Defendant United States, as follows:

a. In the amount of $2,000,000.00 to compensate Plaintiff Edge for the loss of its business

b. In the amount of $6,915,726.95 to compensate Plaintiff Edge for the amount it indemnifies its Bonding Company.

c. To declare the termination a termination for the convenience of the government to restore the reputation of Plaintiff Edge and allow it to secure bonds needed to re-start its business and recover its credit.

d. Award attorney fees under the Equal Access to Justice Act, 28 USC 2412 et sec.

**COUNT II**

20. Plaintiff Edge re-alleges the preceding paragraphs as if fully set forth herein.

21. That during the course of the construction, Plaintiff Edge submitted requests for change orders for various extra work ordered by the Contracting Officer's Project Representative.

22. That Plaintiff Edge submitted its request for a change order in the amount of $829,487.00 plus its fees of 15% of $124,423.05 for a total of $953,910.05, for the additional labor and materials required to overcome the adverse weather conditions resulting differing site conditions as required by the Defendant United States.

23. That the Defendant United States wrongfully refused to issue its change order.

24. That the wrongful refusal to issue its change order was a breach of contract.

25. That the breach of contract damaged Plaintiff Edge in the amount of $953,910.05.

WHEREFORE, Plaintiff Edge prays that this honorable court grant judgment in its favor against Defendant United States in the amount of $953,910.05 and award attorney fees under the Equal Access to Justice Act, 28 USC 2412 et sec.

**COUNT III**

26. Plaintiff Edge re-alleges the preceding paragraphs as if fully set forth herein.

27. That during the course of the construction, Plaintiff Edge submitted requests for change orders for various extra work ordered by the Contracting Officer's Project Representative.

28. That Plaintiff Edge submitted its request for a change order in the amount of $91,907.00 plus its fees of 15% of $13,7786.05 for a total of $105,693.05 for the additional labor and materials to move a well for domestic water 800 feet from the fuel tanks as required by the Defendant United States.

29. That the Defendant United States wrongfully refused to issue its change order.

30. That the wrongful refusal to issue its change order was a breach of contract.

31. That the breach of contract damaged Plaintiff Edge in the amount of $105,693.05.

WHEREFORE, Plaintiff Edge prays that this honorable court grant judgment in its favor against Defendant United States in the amount of $105,693.05 and award attorney fees under the Equal Access to Justice Act, 28 USC 2412 et sec.

**COUNT IV**

32. Plaintiff Edge re-alleges the preceding paragraphs as if fully set forth herein.

33. That during the course of the construction, Plaintiff Edge submitted requests for change orders for various extra work ordered by the Contracting Officer's Project Representative.

34. That Plaintiff Edge submitted its request for a change order in the amount of $20,098.00 plus its fees of 15% of $3,014.70 for a total of $23,112.70 for the additional labor and materials to furnish and install an additional catch basin and 160 lineal feet of 6" storm line as required by the Defendant United States.

35. That the Defendant United States wrongfully refused to issue its change order.

36. That the wrongful refusal to issue its change order was a breach of contract.

37. That the breach of contract damaged Plaintiff Edge in the amount of $23,112.70.

WHEREFORE, Plaintiff Edge prays that this honorable court grant judgment in its favor against Defendant United States in the amount of $23,112.70 and award attorney fees under the Equal Access to Justice Act, 28 USC 2412 et sec.

**COUNT V**

38. Plaintiff Edge re-alleges the preceding paragraphs as if fully set forth herein.

39. That during the course of the construction, Plaintiff Edge submitted requests for change orders for various extra work ordered by the Contracting Officer's Project Representative.

40. That Plaintiff Edge submitted its request for a change order in the amount of $14,603.00 plus its fees of 15% of $2,190.45 for a total of $16,793.45 for the additional labor and materials to furnish and install an additional catch basins 5A & 6A and 55 lineal feet of 6" pipe as required by the Defendant United States.

41. That the Defendant United States wrongfully refused to issue its change order.

42. That the wrongful refusal to issue its change order was a breach of contract.

43. That the breach of contract damaged Plaintiff Edge in the amount of $16,793.45.

WHEREFORE, Plaintiff Edge prays that this honorable court grant judgment in its favor against Defendant United States in the amount of $16,793.45 and award attorney fees under the Equal Access to Justice Act, 28 USC 2412 et sec.

**COUNT VI**

44. Plaintiff Edge re-alleges the preceding paragraphs as if fully set forth herein.

45. That during the course of the construction, Plaintiff Edge submitted requests for change orders for various extra work ordered by the Contracting Officer's Project Representative.

46. That Plaintiff Edge submitted its request for a change order in the amount of $25,175.00 plus its fees of 15% of $3,776.25 for a total of $28,951.25 for the additional labor and materials to insulate approximately 100 lineal feet of 4" pipe as required by the Defendant United States.

47. That the Defendant United States wrongfully refused to issue its change order.

48. That the wrongful refusal to issue its change order was a breach of contract.

49. That the breach of contract damaged Plaintiff Edge in the amount of $28,951.25

WHEREFORE, Plaintiff Edge prays that this honorable court grant judgment in its favor against Defendant United States in the amount of $28,951.25 and award attorney fees under the Equal Access to Justice Act, 28 USC 2412 et sec.

**COUNT VII**

50. Plaintiff Edge re-alleges the preceding paragraphs as if fully set forth herein.

51. That during the course of the construction, Plaintiff Edge submitted requests for change orders for various extra work ordered by the Contracting Officer's Project Representative.

52. That Plaintiff Edge submitted its request for a change order in the amount of $426,566.00 plus its fees of 15% of $63,984.90 for a total of $490,550.90 for the additional labor and materials to construct a borrow pit to balance the site as required by the Defendant United States.

53. That the Defendant United States wrongfully refused to issue its change order.

54. That the wrongful refusal to issue its change order was a breach of contract.

55. That the breach of contract damaged Plaintiff Edge in the amount of $490,550.90

WHEREFORE, Plaintiff Edge prays that this honorable court grant judgment in its favor against Defendant United States in the amount of $490,550.90 and award attorney fees under the Equal Access to Justice Act, 28 USC 2412 et sec.

**COUNT VIII**

56. Plaintiff Edge re-alleges the preceding paragraphs as if fully set forth herein.

57. That during the course of the construction, Plaintiff Edge submitted requests for change orders for various extra work ordered by the Contracting Officer's Project Representative.

58. That Plaintiff Edge submitted its request for a change order in the amount of $228,929.00 plus its fees of 15% of $34,339.35 for a total of $263,268.35 for the additional labor and materials to accelerate its work in order to attempt to complete the ETA as required by the Defendant United States and its failure to grant an extension of contract time.

59. That the Defendant United States wrongfully refused to issue its change order.

60. That the wrongful refusal to issue its change order was a breach of contract.

61. That the breach of contract damaged Plaintiff Edge in the amount of $263,268.35

WHEREFORE, Plaintiff Edge prays that this honorable court grant judgment in its favor against Defendant United States in the amount of $263,268.35 and award attorney fees under the Equal Access to Justice Act, 28 USC 2412 et sec.

**COUNT IX**

62. Plaintiff Edge re-alleges the preceding paragraphs as if fully set forth herein.

63. That during the course of the construction, Plaintiff Edge submitted requests for change orders for various extra work ordered by the Contracting Officer's Project Representative.

64. That Plaintiff Edge submitted its request for a change order in the amount of $326,371.00 plus its fees of 15% of $48,955.65 for a total of $375,326.65 for the additional labor and materials for unproductive labor in order to attempt to

complete the ETA in severe and adverse weather conditions as required by the Defendant United States and Defendant's failure to grant an extension of contract time.

65. That the Defendant United States wrongfully refused to issue its change order.

66. That the wrongful refusal to issue its change order was a breach of contract.

67. That the breach of contract damaged Plaintiff Edge in the amount of $375,326.65

WHEREFORE, Plaintiff Edge prays that this honorable court grant judgment in its favor against Defendant United States in the amount of $375,326.65 and award attorney fees under the Equal Access to Justice Act, 28 USC 2412 et sec.

**COUNT X**

68. Plaintiff Edge re-alleges the preceding paragraphs as if fully set forth herein.

69. That during the course of the construction, Plaintiff Edge submitted Applications for Payment , the last of which requested the sum of $601,583.00 for work accomplished by Plaintiff Edge prior to termination. Defendant United States approved the amount requested of $596,000.00 but paid only $206,119.00 of that approved payment, deducting improperly therefrom the amount of $390,000.00 for backcharges including liquidated damages, punch list items and rehabilitation of two borrow pits.

70. That the Defendant United States wrongfully refused to pay the deducted $390,000.00.

71. That the wrongful refusal to pay the amount of the approved pay request was a breach of contract.

72. That the breach of contract damaged Plaintiff Edge in the amount of $390,000.00.

WHEREFORE, Plaintiff Edge prays that this honorable court grant judgment in its favor against Defendant United States in the amount of $390,000.00 and award attorney fees under the Equal Access to Justice Act, 28 USC 2412 et sec.

JOHN K. GRYLLS, PC

John K. Grylls
18430 Mack Avenue
Grosse Pointe Farms, MI 48236
(313) 885-0123
(313) 886-7699 fax

**DEPARTMENT OF VETERANS AFFAIRS**
**National Cemetery Administration**
**Construction Support Division (41D3B)**
**810 Vermont Avenue, NW**
**Washington, DC 20420**

September 9, 2005

**In Reply Refer To:** 41D3B

Mr. Solomon O. Obasuyi, President
Edge Construction Company
19011 W. Ten Mile Road, Suite 101
Southfield, MI 78075

Dear Mr. Obasuyi:

**CERTIFIED MAIL RECEIPT NO. 7002 2030 0002 6614 0887**

Subj: NOTICE OF TERMINATION FOR DEFAULT - Contract V786C-708 8(a) dated 9/1/2004, Project No. 923CM2001, Gravesite Development – Phase I at the Great Lakes National Cemetery, Holly Township, Michigan, for the Department of Veterans Affairs, National Cemetery Administration.

This letter advises you that the Department of Veterans Affairs (VA) is Terminating the above referenced contract for Default with the exception of Base Bid Item No. 2, and the portion of the ETA identified **within** the red-lined area of the attached drawing and the accompanying list of work items. **(Attachment 1a and 1b)**.

Despite continuous concerted efforts on the part of VA to assist Edge in successfully performing the Contract, the repeated deficiencies in the quality of work, schedule slippages, poor coordination for the work in the ETA, and poor quality of the minimal amount of work performed in the area outside the ETA is endangering performance and gives VA no confidence that Edge will complete the remainder of the Contract in accordance with the specifications and by the established completion date.

**Examples of performance problems**

The original completion date for the Early Turnover Area (ETA) was established as May 16, 2005. The ETA area was and remains an important Government objective as noted throughout the bidding, award and construction phases. Unusually severe weather contributed to early delays and Edge was given a 63-day time extension due to the weather conditions making the extended completion date for the Early Turnover Area July 18, 2005. It should be noted that, despite the weather delays, Edge's failure to properly mobilize and plan and schedule its work contributed to early delays. For example, in clearing the entire site of vegetation at the very outset and leaving un-drained areas for months contributed to the creation of mud and ponds which interfered with Edge's ability to construct.

EXHIBIT NO. 1

When Edge began performance on the project, the resultant work was fraught with deficiencies as indicated by the 26 Deficiency Omission List (DOL) letters that were issued. Edge failed to meet the July 18th deadline for the ETA. On July 20, 2005, an inspection was held for the ETA. The inspection resulted in a punch list of approximately 37 incomplete items. The resident engineer estimated that only half of the submittals for the project had been received. Of the submittals received, half of those submittals required further information. In addition, to the incomplete items revealed by the inspection, as of the July 20, 2005 inspection date, 16 of the 19 DOLs were still outstanding. DOL #7 indicated that sanitary lines were installed without being tested. DOL #9 indicated that the PIC footer wall at the north end was installed below grade line and that the footer walls were not finished and lacked quality workmanship. One of several deficiencies noted on DOL #2 was that wooden frames for the maintenance building and the PIC building were uncovered, and therefore, unprotected from rain and other weather elements. Edge was informed that the government was concerned about their inability to provide adequate manning.

Examples of Edge's poor coordination and means and methods include the following:

- Materials not being on site when installation is scheduled;
- Materials not being ordered when required;
- Materials being stored in an improper manner that results in damage, exposure to elements;
- No quality control resulting in concrete being poured incorrectly and requiring that it be removed 2 and 3 times:
- Making changes to plans without shop drawings, approvals, or as-builts;
- Pipes being installed and buried before being pressure tested for leaks and having to be dug up to locate leaks.
- Electrical feed lines being buried prior to inspection, requiring that they be dug up to provide proper back fill and specified safety features;

A Show Cause Letter was issued to Edge on July 27, 2005 stating that its failure to comply with the schedule and that its lack of progress as a condition that was endangering the contract. On or about August 8, 2005, Edge provided a revised progress schedule indicating that all of the work in the ETA would be completed by September 1, 2005, with the exception of the "Borrow Pit" and the "Trees and Shrubs". After assessing whether it was probable that your company would meet this schedule despite past failures, VA accepted the schedule by letter dated August 16, 2005. The letter stated the following regarding your proposed schedule:

> This ETA schedule will supercede the ETA milestones contained in the approved project [sic] dated February 7, 2005. All ETA items must be completed in accordance with all terms of the contract including workmanship, by September 1, 2005, with the exceptions of the trees & shrubs and restore burrow pit, which must be completed by September 20, 2005. No other time extensions will be allowed for the ETA.

An inspection was held on September 1, 2005, for the ETA. The ETA was not fully completed in accordance with Contract, including workmanship. The inspection resulted in a punch list of over 70 line items. **(Attachment 2)**. Further, the resident engineer again estimated that only half of the submittals for the project had been received and of the submittals received, half of those require further information. In addition to the deficient items noted in **Attachment 2**, approximately 21 of the 26 DOLs were still found to be outstanding. DOL #9 still indicates that the PIC footer wall at the north end was installed below grade line and that the footer walls were not finished and lacked quality of workmanship. DOL #2 still remained incomplete and the wooden frames for the maintenance building and the PIC building were uncovered and unprotected from rain and other weather elements. These two conditions noted in the Contracting Officer's Show Cause letter dated July 27, 2005 still exist. Outside the ETA area, the PIC Building reflects poor workmanship as noted in the DOL. The material noted in DOL #2 has received damage from the elements.

**Scope of Termination for Default**

VA is terminating the above referenced contract for default with the exception of Base Bid Item No. 2 and the portion of the ETA identified **within** the red-lined area of the attached drawing and the accompanying list of work items. **(Attachments 1a and 1b).** The quality of the workmanship for this area does not meet the contract specifications. Nonetheless, in weighing its increasingly critical burial needs, VA is reluctantly accepting the area of the ETA within the red-lined area. Further, VA will complete the 55 punchlist items associated with the portion of the ETA being accepted as VA has no confidence that Edge will complete them in a timely manner or with quality workmanship.

This Termination for Default is in accordance with the provisions of Federal Acquisition Regulation (FAR) 49.402-3(f), and pursuant to FAR 52.249-10 Default (Fixed-Price Construction) (April 1984). Your lack of progress, failure to meet contract specifications, failure to meet submittal schedules, and poor workmanship quality both inside the ETA area and outside the ETA area and failure to meet progress schedule timelines, are conditions that are endangering the timely performance of the remainder of the contract.

This is the final decision of the Contracting Officer. You may appeal this decision to the agency Board of Contract Appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency Board of Contract Appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency Board of Contract Appeals you may, solely at your election, proceed under the Board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency Board of Contract Appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

The Department of Veterans Affairs Board of Contract Appeals (VABCA) is the authorized represeptative of the Secretary for hearing and determining such disputes. The rules for the VABCA are published in Section 1.783 of Title 38, Code of Federal Regulations. The address of the Board is 810 Vermont Avenue, Northwest, Washington, DC 20420.

Sincerely,

Dana W. Ivey

cc:
David Starkie, Project Manager
Frank Romania, Resident Engineer
Conrad Valle, SBA
John Cougar, State Auto Insurance Companies


URS
NATIONAL CEMETERY ADMINISTRATION
EARLY TURNOVER PLAN
GREAT LAKES NATIONAL CEMETERY

**ATTACHMENT 1 b**

- ETA Burial Areas including the two cremain burial areas and the one direct burial area.
- Irrigation system located in those burial areas
- Asphalt road and curbs
- Two committal shelters
- Administration trailer
- Maintenance Office trailer
- Public restroom trailer
- Shower trailer
- Covered bulk storage bins
- Wells and water distribution
- Fencing and staking around archeological site
- Flag Pole
- Electrical feed and distribution to the trailers and flagpole
- Watering and Trash Basket Station
- Sanitary Sewer System
- Paved Maintenance Yard

**ATTACHMENT 2**

1. Level sprinkler control boxes to grade in direct burial area #5, #6 and #7.
2. Complete installation of flowering water box between burial area #6 and #7.
3. Re-install several control monuments that are low in direct burial area #5.
4. Provide lawn seed and mulch beneath fencing around both temporary committal shelters.
5. Replace lower section of lanyard to temporary 30' flag pole in island. Wire has bur / kink in it.
6. Remove edges of pavement from over top of curbing from primary road way entrance around to committal shelter "A".
7. Re-finish top of wear course pavement through out ETA area where stone aggregate and seams are not bonded properly.
8. Provide and install visitor parking signs (Type A 2) in parking lot. Provide "All" specified ETA signs.
9. Repair broken liquid propane line on east side of storage bldg.
10. Roll pavement next to maintenance bldg on west side.
11. Repair concrete pavement at end of link on west side of maintenance office bldg. Crack in pavement.
12. Replace filter fabric from all inlet grates in pavement and curbing. Remove after lawns are accepted.
13. Clean off all pavement material on all man hole covers and grates.
14. Flush and clean all storm lines.
15. Clean out bottoms of all sumps in storm lines.
16. Install facia on west side of bulk storage roof and gutters.
17. Re-finish portions of exterior walls on bulk storage bldg. Has bug holes and pits.
18. Roll areas of pavement on east and west sides of bulk storage bldg.
19. Trim all concrete expansion joints and install sealer in joints for all sidewalks, pipe bollards and concrete aprons.
20. Re-Install stone rip rap around all inlets and outlets to and from detention pond per contract.
21. Fasten / secure all grates to inlets / outlets.
22. Fill and re-grade bottom of detention pond so that water will run and drain to outlet.
23. Clean bottom of detention pond of rocks and roots and reseed.
24. Replace correct signage at north end of detention pond.
25. Re-surface concrete base of light pole in parking lot. Has bug holes and pits in base.
26. Straighten up orange fencing and staking around archeological site south of burial areas #6 and #7.
27. Replace 4" future gas PVC handhold manhole covers with correct "Gas Plate" cover plate.
28. Remove water from future gas handhold manholes and parge inside of manholes.
29. Re-grade area north east of septic field, east of storage bldg to remove low area and prevent ponding of water and reseed area.
30. Re-grade gravel approach to primary road entrance and administrative road entrance and install stone to meet pavement entrances.
31. Re-grade areas of sprinkler piping installations that have settled in ETA area topsoil and re-seed.
32. Re-place section of concrete sidewalk off main sidewalk entrance around island to maintenance office bldg.
33. Re-place sections of concrete sidewalk that are low between stations 309 and 310. They are holding water.

34. Repair section of low pavement at station 310.
35. Repair low pavement areas in maintenance yard by catch basins #69 and #71.
36. Provide proper grading to inlet ES-01 on east side of primary road near main entrance. Provide temporary seeding.
37. Remove ponding of water at southeast intersection of primary road at station 108+50.
38. Remove ponding of water on east side of primary road at station 104 through station 107.
39. Repair damaged exterior metal sheathing on north west corner of storage bldg.
40. Repair damaged exterior metal sheathing on north east corner of storage bldg.
41. Make maintenance building and storage building weather tight.
42. Provide all certifications for domestic wells and irrigation well. Verify GPM required for irrigation well.
43. Provide privacy fencing and chain link fencing between maintenance building and storage building and in maintenance yard.
44. Install finished roofing materials on storage building.
45. Install fuel tank, waste oil tank and liquid propane tank on pads in maintenance yard. Complete propane pad with gravel, bollards, etc.
46. Complete installation of water line and hose bib for concrete wash pad in maintenance yard.
47. Complete caulking and painting for both temporary committal shelters.
48. Provide and install shower trailer.
49. Complete installations of sprinkler lines along Belford road.
50. Machine brush off all roadways, curbing and maintenance yard area pavement.
51. Install paint stripping in parking lot.
52. Install cover for water bladder tank and piping at north end of temporary trailers.
53. Re-grade outlet to 6" under drain at south side of detention pond and re-seed.
54. Pick up all trash and construction debri in ETA area.
55. Trim all vapor barrior material from concrete floor slab in bulk storage bldg.
56. Install backer rod and sealant to control joints in maintenance building and storage building.
57. Complete trim work to all building roofs.
58. Clean all brick and block to maintenance building and storage building.
59. Install all door grates to maintenance office entrances.
60. Install edging material on west side of maintenance office bldg.
61. Install light pole and fixtures in maintenance yard.
62. Install removable pipe bollards to fuel tank pad and waste oil pad.
63. Repair stone work on mock up wall on west link of maintenance office bldg. Complete remaining stone work.
64. Remove temporary plugs to septic tank's sanitary lines.
65. Fasten covers to septic tanks.
66. Clean installed fencing to both committal shelters.
67. Re-locate vent piping between seam on maintenance office roof. Repair roof @ furnace duct.
68. Repair soffit vent on northeast corner of maintenance office roof.
69. Plant trees, shrubbery and plantings in ETA area. Provide shop drawings for this item.
70. Plant and re-seed bare areas of ETA area. Re-grade and reseed low areas.
71. Paint all bollards.
72. Contractor shall address all exposed fasteners at standing metal seam roof system and soffit system.
73. Repair and maintain soil erosion control measures.
74. Provide NPDES permit.

75. Install facia, gutters, and eaves on maintenance bldg.
76. Repaint paint stripping at parking lot. Material applied is not appropriate thickness.
77. Pick up all trash and debri at PIC area.
78. Restore borrow pit on south side of archeological area south of burial area #6 and #7 by proper grading of slopes, installing topsoil and seeding.
79. Restore borrow pit on east side of archeological area east of construction trailer by proper grading of slopes, installing topsoil, and seeding.

Complete / Repair / Replace / Correct the following DOL's (Dificiency Omission List):

DOL # 2
# 4
# 5
# 6
# 7
# 8
# 9
# 12
# 13
# 14
# 15
# 16
# 17
# 18
# 19
# 20
# 21
# 22
# 23
# 25
# 26

# EXHIBIT 2

DEPARTMENT OF VETERANS AFFAIRS
National Cemetery Administration
Washington DC 20420

Draft

HOLLY, MICHIGAN

## TRANSFER AND CUSTODY RECEIPT

GREAT LAKES NATIONAL CEMETERY
CONTRACT No. V786C-708a PROJECT No. 923CM2001

Custody is hereby assumed this date, September 1, 2005, and substantial completion is established as September 1, 2005, by the Department of Veterans Affairs of the areas and items listed below, as completed by Edge Construction; under Contract No. V786C-708a Project No. 923

1. Area Inspected: Early Turn Over Area

2. Limits of Acceptance: Early Turn Over Area

3. Exclusions: See attached punch list Dated September 1, 2005

This action will not relieve the Contractor of completing the items of Correction and Omission listed in the Final / Partial Final Inspection Report. This action will not relieve the Contractor of any other deficiencies that may appear prior to final financial settlement of the Contract. This action will not relieve the Contractor of any contractual obligations including the guaranty requirements.

The Contractor will not be held responsible for any damage caused by virtue of the Department of Veterans Affairs occupancy, except where such damage may be due to inferior workmanship or material.

The work as described above is subject to a guaranty period one year from the date of acceptance in accordance to the provisions as stated by Contract Specification Section 01001, General Condition, Paragraph 64.52.246-21 and as noted in the applicable specification sections regarding duration of guaranty periods exceeding one year, and as listed below including post maintenance requirements.

FOR: EDGE CONSTRUCTION

____________________ ____________________
Date

FOR: DEPARTMENT OF VETERANS AFFAIRS:

____________________ ____________________
Contracting Officers Representative (COR) Date

____________________ ____________________
Memorial Service Network (MSN) Director Date



EXHIBIT NO. 2.

# EXHIBIT 3

SUR 6909 187 BOND

Bond No. 6909187

| PERFORMANCE BOND *(See instructions on reverse)* | DATE BOND EXECUTED *(Must be same or later than date of contract)* SEPTEMBER 14, 2004 | OMB No.: 9000-0045 Expires: 09/30/98 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405

| | |
|---|---|
| PRINCIPAL *(Legal name and business address)*<br>EDGE CONSTRUCTION COMPANY<br>19011 TEN MILE ROAD, SUITE 101<br>SOUTHFIELD, MI 48075 | TYPE OF ORGANIZATION ("X" one)<br>☐ INDIVIDUAL ☐ PARTNERSHIP<br>☐ JOINT VENTURE ☒ CORPORATION<br>STATE OF INCORPORATION<br>MICHIGAN |
| SURETY(IES) *(Name(s) and business address(es))*<br>STATE AUTOMOBILE MUTUAL INSURANCE COMPANY<br>518 EAST BROAD STREET<br>COLUMBUS, OHIO 43215 | PENAL SUM OF BOND<br>MILLION(S): 8 · THOUSAND(S): 691 · HUNDRED(S): 000 · CENTS: 00<br>CONTRACT DATE: · CONTRACT NO.: V786C-709 8a |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The Principal has entered into the contract identified above.

**THEREFORE:**

The above obligation is void if the Principal -

(a)(1) Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of the contract during the original term of the contract and any extensions thereof that are granted by the Government, with or without notice to the Surety(ies), and during the life of any guaranty required under the contract, and (2) performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of any and all duly authorized modifications of the contract that hereafter are made. Notice of those modifications to the Surety(ies) are waived.

(b) Pays to the Government the full amount of the taxes imposed by the Government, if the said contract is subject to the Miller Act, (40 U.S.C. 270a-270e), which are collected, deducted, or withheld from wages paid by the Principal in carrying out the construction contract with respect to which this bond is furnished.

**WITNESS:**

The Principal and Surety(ies) executed this performance bond and affixed their seals on the above date.

**PRINCIPAL**

| | | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | 3. | |

**INDIVIDUAL SURETY(IES)**

| | | |
|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
| NAME(S) *(Typed)* | 1. | 2. |

**CORPORATE SURETY(IES)**

| SURETY A | | | | |
|---|---|---|---|---|
| NAME & ADDRESS | STATE AUTOMOBILE MUTUAL INSURANCE COMPANY 518 E. BROAD STR., COLUMBUS, OHIO 43215 | STATE OF INC. OHIO | LIABILITY LIMIT $ 66,209,000.00 | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) *(Typed)* | 1. JASON O. MAHAR, ATTORNEY-IN-FACT | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition not usable

STANDARD FORM 25 (REV. 5-96)
Prescribed by GSA-FAR (48 CFR) 53.228(b)

EXHIBIT NO. 3.

Sur 6909187 BOND

**CORPORATE SURETY(IES) (Continued)**

| | | | | | |
|---|---|---|---|---|---|
| SURETY B | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| SURETY C | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| SURETY D | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| SURETY E | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| SURETY F | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| SURETY G | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

| BOND PREMIUM | RATE PER THOUSAND ($) | TOTAL ($) |
|---|---|---|
| | $25-15-10-7.5-6.5 | $72,492.00 |

**INSTRUCTIONS**

1. This form is authorized for use in connection with Government contracts. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

# EXHIBIT 4

SUR 6909187 Bond No. 6909187 BOND

| PAYMENT BOND (See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract) SEPTEMBER 14, 2004 | OMB No.: 9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("X" one) |
|---|---|
| EDGE CONSTRUCTION COMPANY<br>19011 TEN MILE ROAD, SUITE 101<br>SOUTHFIELD, MI 48075 | ☐ INDIVIDUAL ☐ PARTNERSHIP<br>☐ JOINT VENTURE ☒ CORPORATION<br>STATE OF INCORPORATION: MICHIGAN |
| SURETY(IES) (Name(s) and business address(es))<br>STATE AUTOMOBILE MUTUAL INSURANACE COMPANY<br>518 EAST BROAD STREET<br>COLUMBUS, OH 43215 | PENAL SUM OF BOND: MILLION(S) 8 · THOUSAND(S) 691 · HUNDRED(S) 000 · CENTS 00<br>CONTRACT DATE: · CONTRACT NO.: V786C-708 8a |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

**PRINCIPAL**

| | 1. | 2. | 3. | |
|---|---|---|---|---|
| SIGNATURE(S) | (Seal) | (Seal) | (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | 3. | |

**INDIVIDUAL SURETY(IES)**

| | 1. | 2. |
|---|---|---|
| SIGNATURE(S) | (Seal) | (Seal) |
| NAME(S) (Typed) | 1. | 2. |

**CORPORATE SURETY(IES)**

| SURETY A | | | | |
|---|---|---|---|---|
| NAME & ADDRESS | STATE AUTOMOBILE MUTUAL INSURANCE COMPANY<br>518 EAST BROAD ST. COLUMBUS, OH 43215 | STATE OF INC. OHIO | LIABILITY LIMIT $ 66,209,000.00 | Corporate Seal |
| SIGNATURE(S) | 1. | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. JASON D. MAHAR, ATTORNEY-IN-FACT | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

STANDARD FORM 25A (REV. 10-98)
Prescribed by GSA-FAR (48 CFR) 53.228(c)

EXHIBIT NO. 4

Sur 6909187 BOND

CORPORATE SURETY(IES) *(Continued)*

| | | | | | |
|---|---|---|---|---|---|
| SURETY B | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY C | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY D | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY E | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY F | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY G | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.