IN THE UNITED STATES FEDERAL COURT OF CLAIMS

EDGE CONSTRUCTION COMPANY, INC.,
A Michigan corporation

Plaintiff

V

THE UNITED STATES.

Defendant

Case Number: 06-635 C
Chief Judge Damich

---

**JOINT PRELIMINARY STATUS REPORT (REVISED)**

Pursuant to Rule 16 and Appendix A. Rules of the United States Court of Federal Claims and the Special Procedures Order, revised May 19, 2006, the parties submit the following Joint Preliminary Status Report.

4(a) Plaintiff, EDGE CONSTRUCTION COMPANY, INC. (Edge), brings this action under the Contract Disputes Act 41 U.S.C 603 et. sec.

4(d) There is no basis to transfer or remand this case to another tribunal, as there are no related cases in this or other tribunals.

4(h) The material issues in dispute are as follows;

Plaintiff:

Plaintiff Edge asserts that the termination for Default was wrongful in that the Government did not recognize the early delay caused by the Government drawings not being approved by the local authorities, Oakland County Drain Commission, for permitting the soil erosion. The Notice to proceed was issued September 21, 2004 and the Soil Erosion permit was not issued until February 18, 2005 after repeated submittals by the Governments engineers, causing a 150 day delay in the start of the road right of way and most of the mass earth work. This delay together with the unusually bad weather prevented work in the fall of 2004 putting it in the severe winter months of

2004-2005. The well permit was also delayed due to the Government engineers relocating the well in March 2005 preventing the installation until after the frost laws expired in the spring of 2005. In March 2005 the Government extended the contract completion date for the Early Turnover Area (ETA) from May 16, 2005 until August 16, 2005 or 92 days. Thereafter, on April 19, 2005, the Government issued its Modification TE#1 extending the contract date for the ETA to July 18, 2005 or only 63 days and containing no extension for the completion date of the entire project, which Modification was not accepted by Plaintiff Edge. Despite extremely wet spring and summer of 2005, progress was made and a Punch List was issued by the Government as of July 22, 2005 citing 40 deficiencies and 19 DOL's which were noticed in the governments Show Cause Notice of July 27, 2005. Plaintiff Edge submitted its response to the Show Cause Notice by its major subcontractor Ferguson, which was rejected by the Government. Edge submitted a second response to the Show Cause Notice on September 1, 2005. Also on September 1, 2005, the Government made a final inspection, issued its Punch List and submitted a certificate of substantial completion, Transfer and Custody Receipt. The Government under extreme political pressure unjustly terminated Plaintiff' Edge's contract even though the punch list was mostly completed and the DOL issues were taken care of. The Government occupied and commenced burial within a week of the Termination that proved that the ETA was in fact substantially complete by September 9, 2005.

Defendant:

The termination for default was based upon the following;

Despite continuous concerted efforts on the part of the VA to assist Edge in successfully performing the Contract, the repeated deficiencies in the quality of the work, schedule slippages, poor coordination for the work in the ETA, and poor quality of the minimal amount of work performed in the area outside of ETA, endangered performance and

gave VA no confidence that Edge would complete the remainder of the Contract in accordance with the specifications and by the established completion date. Examples of performance problems include:

*The original completion date for the Early Turnover Area (ETA) was established as May 16, 2005. The ETA area was an important Government objective as noted throughout the bidding, award and construction phase. Unusually severe weather contributed to early delays and Edge was given a 63-day tine extension due to the weather conditions making the amended completion date for the ETA July 18, 2005. Despite the weather delay, Edge's failure to properly mobilize and plan and schedule its work contributed to early delays. For example, in clearing the entire Site of vegetation at the very onset and leaving un-drained areas for months contributed to the creation of mud and ponds which interfered with Edge's ability to construct. When Edge began performance on the project, the resultant work was fraught with deficiencies as indicated by the 26 Deficiency Omission List (DOL) letters that were issued. Edge failed to meet the July 18 deadline for the ETA, On July 20, 2005, an inspection was held for the ETA. The inspection resulted in a punch list of approximately 37 incomplete items. The resident engineer estimated that only half of the submittals for the project had been received. Of the submittals received, half of those submittals required further information. In addition, to the incomplete items revealed by the inspection, as of July 20, 2005, inspection date, 16 of the 19 DOLs were still outstanding. DOL#7 indicated that sanitary lines were installed without being tested. DOL#9 indicated that the PIC footer wall at the north end was installed below grade line and that the footer walls were not finished and lacked quality workmanship. One of several deficiencies noted on DOL#2 was that wooden frames for the maintenance building and PIC building were uncovered, and therefore, unprotected from the rain and other weather elements. Edge was informed that the Government was concerned about their ability to provide adequate manning.*

Examples of Edge's poor coordination and means and methods include the following:

*Materials not being on site when installation is scheduled.*

*Materials not being ordered when required*

*Materials being stored in an improper manner that resulted in damage and exposure to elements.*

*No quality control resulting in concrete being poured incorrectly and requiring that it be removed 2 and 3 times.*

*Making changes to plans without shop drawings, approvals or as-builts.*

*Pipes being installed and buried without being pressure tested for leaks and having to be dug up to locate leaks.*

*Electrical feed lines being buried prior to inspection, requiring that they be dug up to provide proper back fill and specified safety features.*

For equitable adjustment claims, there are no final decisions from the Government.

4(i) At the present time, ADR is not agreeable to the parties due to the need for both parties to conduct discovery and to further evaluate the merits of their claims and defenses. The parties have agreed to evaluate the viability of ADR as discovery progresses and will report to the Court if the parties desire to conduct ADR. Based upon prior experience, the parties believe that a "settlement judge" would be the preferred method of ADR, should ADR be employed

4(j) Scheduling

1. Place of Trial - Detroit Michigan
   Expected time for trial - Two weeks
   Earliest date for Trial - January 2008

2. Dates for additional parties - not applicable

3. Dispositive Motions - neither party anticipates filing dispositive motions at this time.

4. Phases - No

5. Discovery – The parties request a discovery period of 8 months ending October 31, 2007.

6. Experts - The parties propose that expert reports be due 60 days before the end of discovery or August 31, 2007 simultaneously.

7. Expert deadline - August 31, 2007 with depositions of experts to take place thereafter if necessary.

8. The parties have agreed that it may be necessary to exceed 10 depositions and or 25 interrogatories per party due to the myriad of relevant facts to be established and the number of fact witnesses involved.

9. Mental and or physical examination of parties are not required

4(l) Counsel have had several meetings by telephone and via email starting January 22, 2007. Parties agree to make initial disclosures by April 15, 2007.

¶7 The following dates are mutually acceptable for a preliminary status conference: April 3, 2007, April 4, 2007 and April 5, 2007 at 10:00 a.m. to 11:30 a.m. and 1:30 p.m. to 4:00 p.m. each day.

Appendix to JPSR: There is no additional document known at this time to be relevant to jurisdiction or disputed facts.

March 17, 2007

JOHN K. GRYLLS, PC
/s/ John K. Grylls
JOHN K. GRYLLS
18430 Mack Avenue
Grosse Pointe Farms, MI 48236
(313) 885-0123
(313) 886-7699 fax
jkgrylls@comcast.net

PETER D. KEISLER
DAVID M. COHEN
Director
DONALD E. KINNER
Assistant Director
/s/ Brian S. Smith
BRIAN S. SMITH
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
(202) 616-0391
(202) 353-7988 fax
brian.smith@usdoj.gov

## CERTIFICATE OF FILING

I hereby certify under penalty of perjury that on Marchg 17, 2007, a copy of the foregoing JOINT PRELIMINARY STATUS REPORT (REVISED) was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John K. Grylls
JOHN K. GRYLLS